BERT J. HOPKINS, Plaintiff, *v.* CHARLES G. HANNA, as Mayor of the City of Syracuse, and Others, Defendants.

Supreme Court, Onondaga County, February 8, 1930.

*Clifford H. Searl* and *George A. Langan,* for the plaintiff.

*Frank P. Malpass, Corporation Counsel* [*Arthur M. Beech* of counsel], for the mayor of the city of Syracuse and others.

*Mackenzie, Smith, Mitchell & Bruce* [*H. Duane Bruce* of counsel], for The Seagrave Corporation.

LEWIS (EDMUND H.), J.   The determination of this motion calls for the interpretation of section 120 of the Second Class Cities Law (as amd. by Laws of 1920, chap. 215) which fixes the procedure and limits the authority of boards of contract and supply of those municipalities formerly termed " Second Class Cities " in the award of contracts for the purchase of materials or the performance of work, the cost of which exceeds $500.

The affidavits filed by the defendants question the allegations of the complaint that the plaintiff is a taxpayer of the city of Syracuse, legally qualified as such to bring this action.   I prefer,

however, to disregard this point and base my determination upon the chief point of law involved upon this application.

On or about December 17, 1929, the board of contract and supply of the city of Syracuse advertised for sealed bids for certain units of fire apparatus, viz.: " Two combination Pumping Engines and Hose Wagons and one four-wheel tractor-drawn 85 ft. aerial truck," in accord with plans and specifications on file in the office of said board. Thereafter the following bids were received:

| | Bid for two pumpers | Bid for aerial trucks | Combination |
|---|---|---|---|
| American-LaFrance & Foamite Industries, Inc. | $24,400 | $15,500 | $37,960 |
| The Seagrave Corporation | 25,000 | 15,750 | 39,575 |
| Aherns-Fox Fire Engine Company | 27,750 | 16,750 | 43,750 |
| Mack International Motor Truck Corporation | 26,000 | 16,500 | ....... |

On or about December 24, 1929, the board of contract and supply was advised by the commissioner of public safety that the bid submitted by American-LaFrance & Foamite Industries, Inc., called for the installation in each pumping engine and aerial truck of an engine with cylinders of size and arrangement which did not comply with the city's specifications therefor. Thereupon the board rejected the bid last above mentioned and the entire contract for the different units of the fire apparatus in question was awarded to the defendant The Seagrave Corporation for $39,575.

An injunction order issued in this action was promptly served upon the board restraining it from entering into or completing any contracts for said apparatus until the hearing and determination of this motion.

The complaint by the plaintiff taxpayer, for the alleged purpose of avoiding the waste of public funds, seeks to permanently enjoin the defendant members of the board of contract and supply from entering upon and carrying out the terms of a contract with the defendants The Seagrave Corporation or Aherns-Fox Fire Engine Company for the purchase of said units of fire apparatus.

The complaint further alleges:

" 10. * * * That said specifications were drawn in such an artful manner that the only standard equipment that could meet such requirements would be the machines manufactured by the said Aherns-Fox Fire Engine Company and Seagrave Corporation, and that said specifications were drawn in such an artful manner as to exclude any other manufacturer from furnishing equipment of standard manufacture for this contract.

" 11. That the preparation of said specifications for such requirements was done wrongfully, illegally and with the corrupt motive of making them similar and corresponding to the specifications built by the defendants, Aherns-Fox Fire Engine Company and Seagrave Corporation, and with the motive and design to bar other bidders, destroy competition and to secure for one of said defendants, said contract at an excessive price; that said specifications were prepared wrongfully, illegally and in an artful manner to correspond only to such standard equipment as was manufactured by said two defendants, Aherns-Fox Fire Engine Company and Seagrave Corporation."

From the record before the court upon this motion it appears that the specifications for the engine to be installed in the different units of fire apparatus in question call for an engine with minimum cylinder bore of five and three-fourths inches, with cylinders cast singly and with seven main bearings on the crankshaft. Under the bid submitted by the American-LaFrance & Foamite Industries, Inc., that corporation proposed to furnish an engine with a bore dimension of five and one-half inches, cylinders cast in pairs with four main bearings.

It also appears that under the specifications filed by the board of contract and supply the defendant The Seagrave Corporation was able to furnish an engine which it manufactured regularly as one of its standard products, while the engine manufactured by American-LaFrance & Foamite Industries, Inc., in its regular production would not conform to the board's specifications; that in order to supply an engine of the cylinder dimensions and arrangement which would conform to said specifications the latter corporation, or any corporation which did not regularly manufacture the same, would be called upon to make a large expenditure for new plant equipment and other production costs.

The plaintiff also claims that the difference between the dimensions of cylinder bore as specified by the city and those proposed to be furnished by the American-LaFrance Company, " are nonessential features and that the equipment furnished by the lowest bidder upon said material would perform the functions equally well."

Upon this latter feature of the case the record before the court presents in verified form the opinions of a number of men who appear to be experts in this particular branch of engineering. These opinions differ widely, which fact at the outset leads the court to the conclusion that it should not in this action substitute its judicial determination as to engine efficiency for the judgment of those city agencies having the matter in charge as a part of the

proper administration of municipal fire prevention. (*Admiral Realty Co.* v. *City of New York*, 206 N. Y. 110, 125; *Talcott* v. *City of Buffalo*, 125 id. 280, 288; *Campbell* v. *City of New York*, 244 id. 317, 328.)

In the absence of a clear showing of abuse by the city's official agencies of their power to choose the type of mechanism found to be most efficient, this court should not interfere with such choice. An abuse of that power has not been shown.

The plaintiff in his complaint lays particular stress upon the alleged fact that the successful bidder proposed to furnish for the different units of fire apparatus involved, engines whose horse-power development falls short twenty-five one-hundredths of one horse-power. Assuming that to be true, I have determined to dismiss this objection under the rule that if the requirement of a " statute is substantially complied with and its actual purpose secured, * * * an unimportant variance in the proposed bid does not render the contract invalid." (*People ex rel. J. B. Lyon Company* v. *McDonough*, 173 N. Y. 181, 190.) The propriety of such conclusion in this case is strengthened by the clause in the city's specifications of which all bidders had notice, which provides: " The Board of Contract and Supply shall be the judge of the qualifications of the offerings, and will determine the question regarding conformance of any offer with the specifications."

Stripped of all questions concerning the relative efficiency of different engines whose parts differ in size and arrangement, the determination of this motion can be properly narrowed to the question: Is the action of the board of contract and supply in conflict with the legislative purpose of section 120 of the Second Class Cities Law when it appears that the board's specifications allow one bidder to supply an engine which is its regularly manufactured product but requires another to go to the expense of special plant preparation to manufacture such engine which is not within its standard production?

The section of the statute which plaintiff invokes, so far as material, provides (Second Class Cities Law, § 120, as amd. by Laws of 1920, chap. 215):

" § 120. Board of contract and supply. There shall be a board of contract and supply, composed of the mayor, comptroller, commissioner of public works, corporation counsel and city engineer. Except as otherwise provided by law, it shall be the duty of such board, after public notice and in accordance with regulations to be prescribed by general ordinance of the common council, to let to the lowest bidder, who will give adequate security therefor, all contracts for the performance of any work or for the supply of any

material required by or for the use of any officer, board, body or department of the city, in all cases where the expense of such work or materials, or both, shall exceed the sum of five hundred dollars, unless by ordinance of the common council adopted by a vote of not less than four-fifths of all the members thereof and unanimously approved by the board of estimate and apportionment, it is determined to be impracticable to procure such work or materials or both by contract, in which case said ordinance shall designate the officer, board or department to procure such work or purchase such materials. * * * The board shall have power to reject all bids or proposals if in its opinion the lowest bid or proposal is excessive. The said notice shall describe the work and materials for which contracts will be let and the day and hour and place of the meeting of the board at which proposals therefor will be opened. Specifications for the performance of any work and for the supply of any materials shall be prepared and set forth with sufficient detail to inform all persons proposing to bid therefor of the nature of the work to be done and of the materials to be supplied, and written or printed copies thereof shall be delivered to all applicants therefor. * * *"

Upon the record presented upon this motion I conclude that the action of the board of contract and supply in awarding the contract in question did not violate the provisions of the statute above quoted.

I cannot agree with plaintiff's conclusion that his position upon this motion is fully supported by the opinion of Mr. Justice ANDREWS in *Grace* v. *Forbes* (64 Misc. 130). That opinion, which interprets the statute quoted above, has been controlling law in this State upon the subject for many years and in my opinion will continue to control those cases, the facts of which come within its scope. It does not apply to the facts presented by the record upon this motion.

In the *Grace Case* (*supra*), which involved the award of a contract for a fire alarm telegraph system, the court (at p. 135) states: "These specifications * * * seem to be taken directly from specifications of patents obtained on their apparatus by the Gamewell Company [the successful bidder] and still valid and in force. Concededly no person other than the Gamewell Company could, without its consent, manufacture or sell the knife switches, or the rheostats described, or many of the other appliances and instruments."

In the case last above cited no bidder without a license to do so could produce the patented apparatus specified except the owner of the patent which was the successful bidder. In the

instant case, on the contrary, any manufacturer of fire apparatus could produce the engine in question if it chose to do so. The plaintiff frankly concedes that no patents prohibit the manufacture and use of an engine having the cylinder dimensions and arrangement which the city's engineers and mechanics have determined to be the most efficient and accordingly have specified.

It is true the successful bidder manufactures as a regular standard product an engine which the board rules conforms to its specifications. However, that fact cannot invalidate the board's award. If this motion should be decided in accord with plaintiff's contention it would necessarily follow that, notwithstanding the honest recommendation of the city's experts, henceforth the board of contract and supply must prepare its specifications in such manner as to avoid the specification of any unpatented device which is produced regularly as a part of any manufacturer's plant program. Clearly that was not the purpose of the statute involved.

While the Legislature intended " to prevent favoritism, corruption, extravagance and improvidence in the procurement of work and supplies for the city " (*People ex rel. Coughlin* v. *Gleason*, 121 N. Y. 631, 634) by the enactment of such a statute, the act must be given a reasonable and practical interpretation to the end that municipal public work may be performed not only honestly but efficiently.

The record before me upon this motion does not sustain the charge made by the plaintiff against officials of the city of Syracuse, " that said specifications were drawn in such an artful manner as to exclude any other manufacturer [than Aherns-Fox Fire Engine Company and The Seagrave Corporation] from furnishing equipment of standard manufacture for this contract." Nor is there any support for the charge that said specifications were prepared " wrongfully, illegally and with the corrupt motive * * * to destroy competition."

While recognizing the sound legal conclusion reached by the court in the *Grace Case* (*supra*) upon the facts there presented, I have reached the conclusion upon the record before me that the award of the contract in question, as made by the board of contract and supply, was legal.

By reason of that conclusion and in view of the immediate need of the fire apparatus involved, as shown by the affidavit of the chief of the fire department of the city of Syracuse, the motion by the plaintiff for the continuance of the temporary injunction *pendente lite* is denied, with ten dollars costs.

Order accordingly.