URBAN ROZLER, as Mayor of the Village of Lancaster, et al., Individually and on Behalf of the Village of Lancaster, Respondents-Appellants, v WILLIAM R. FRANGER et al., Individually and as Trustees of the Village of Lancaster, et al., Appellants-Respondents; LOUIS J. LEFKOWITZ, as Attorney-General of the State of New York, Respondent.

Fourth Department, January 20, 1978

48

## APPEARANCES OF COUNSEL

*Jaeckle, Fleischmann & Mugel (Edward J. Murty, Jr.,* of counsel), for appellants-respondents.

*Louis J. Lefkowitz, Attorney-General (Elaine Weiss, Ruth Kessler Toch, Michael G. Wolfgang* and *Maryann S. Freedman* of counsel), for respondent.

*Donald A. Walsh* for New York State Conference of Mayors and Municipal Officials, *amicus curiae.*

## OPINION OF THE COURT

HANCOCK, JR., J.

■ ■ We construe section 10 (subd 1, par [ii], cl e, subcl [3]) of the Municipal Home Rule Law as permitting a village to amend or supersede the Village Law with respect to its own property, affairs or government, and hold that section 10 as so construed is constitutional.

The instant proceeding arises from the enactment by the

appellants-respondents village trustees on July 14, 1975 of Local Law No. 10 of the Local Laws of 1975 of the Village of Lancaster which by its terms vests in the Board of Trustees of the Village of Lancaster the power to appoint, supervise and terminate all departmental and nonelected officials and employees of the village. The local law further provides for the repeal of sections 3-301 (subd 3); 4-400 (subd 1, pars c and e); 3-308 (subd 5); and 3-312 (subd 3) of the Village Law[1] of the State of New York, as they apply to the Village of Lancaster. These sections of the Village Law vest certain specified powers in the village mayor, including the power of appointment, supervision and termination of employment with respect to the village personnel.

On or about September 17, 1975 Local Law No. 10 was put to a referendum and passed by the voters of the Village of Lancaster.

The respondent-appellant mayor thereafter commenced this proceeding seeking an order, *inter alia,* declaring section 10 (subd 1, par [ii], cl e, subcl [3]) of the Municipal Home Rule Law to be unconstitutional and Lancaster Local Law No. 10 of 1975 to be null and void and directing appellants-respondents Wolf and Sharp, who had been hired by the trustees pursuant to the local law, to repay money allegedly illegally paid to them under the local law. The Attorney-General was joined as a party respondent because the constitutionality of a State statute was in issue.

By order dated December 12, 1975 the respondent-appellant Donald F. Pfeifer, a resident, citizen, and taxpayer of the village, was joined as a petitioner.

Special Term in a judgment and order based on its memorandum decision declared section 10 (subd 1, par [ii], cl e, subcl [3]) of the Municipal Home Rule Law to be constitutional, held the Village Law to be a general law, and declared

---

1. Village Law (§ 3-301, subd 3) states: "[t]he mayor, trustees and village justices shall be elective officers * * * [a]ll other officers shall be appointed by the mayor, subject to the approval of the board of trustees."

Village Law (§ 3-308, subd 5) concerns mayoral appointments, subject to the approval of the board of trustees, of members of any board of commissioners.

Village Law (§ 3-312, subd 3) concerns mayoral appointments to fill vacancies in offices caused other than by expiration of the terms thereof.

Village Law (§ 4-400, subd 1, pars c and e) state that "[i]t shall be the responsibility of the mayor: c. to appoint all department and non-elected officers and employees subject to the approval of the board of trustees * * * e. to exercise supervision over the conduct of the police and other subordinate officers of the village".

Local Law No. 10 to be null and void. It denied the further relief requested by the respondents-appellants mayor and Pfeifer including the request that the village recover the allegedly illegal payments from Wolf and Sharp.

The issue on this appeal is whether the village was empowered under section 10 (subd 1, par [ii], cl e, subcl [3]) of the Municipal Home Rule Law to supersede or amend, in their particular application to the village, the various provisions of the Village Law pertaining to the authority of the mayor to appoint, terminate and supervise the nonelected officers and employees of the village.

Section 10 of the Municipal Home Rule Law, insofar as pertinent, reads:

"(1) In addition to powers granted in the constitution, the statute of local governments or in any other law,

"(i) every local government shall have power to adopt and amend local laws *not inconsistent with the provisions of the constitution or not inconsistent with any general law relating* to its property, affairs or government and,

"(ii) every local government, as provided in this chapter, shall have power to adopt and amend local laws *not inconsistent with the provisions of the constitution or not inconsistent with any general law,* relating to the following subjects, whether or not they relate to the property, affairs or government of such local government, except to the extent that the legislature shall restrict the adoption of such a local law relating to other than the property, affairs or government of such local government:

"a. A county, city, town or village:

"(1) The powers, duties, qualifications, number, mode of selection and removal, terms of office, compensation, hours of work, protection, welfare and safety of its officers and employees, except that cities and towns shall not have such power with respect to members of the legislative body of the county in their capacities as county officers. This provision shall include but not be limited to the creation or discontinuance of departments of its government and the prescription or modification of their powers and duties. * * *

"e. A village: * * *

"(3) *The amendment or supersession in its application to it, of any provision of the village law relating to the property, affairs or government of the village* or to other matters in

relation to which and to the extent to which it is authorized to adopt local laws by this section, *notwithstanding that such provision is a general law, unless the legislature expressly shall have prohibited the adoption of such a local law."* (Emphasis added.)

In holding section 10 (subd 1, par [ii], cl e, subcl [3]) of the Municipal Home Rule Law to be constitutional but Local Law No. 10, enacted thereunder, to be null and void, Special Term read section 10 (subd 1, par [ii], cl e, subcl [3]) as being subject to the limitation (set forth in section 10 [subd 1, pars (i), (ii)] of the Municipal Home Rule Law) that any local law adopted thereunder not be "inconsistent with any general law." Inasmuch as the Village Law was held to be a general law, the local law which purported to supersede or amend it was found to be contrary to the limitation in section 10 (subd 1, pars [i], [ii]) of the Municipal Home Rule Law and therefore void.

█ We agree that the Village Law is a general law. The New York State Constitution (art IX, § 3, subd [d]) and Municipal Home Rule (§ 2, subd 5) both define a general law as a law or State statute "which in terms and in effect applies alike to all * * * villages."[2]

The Village Law, by its terms, applies to all villages of the State "heretofore or hereafter incorporated." (Village Law, § 1-102.) Its constitutional purpose was "to provide a uniform charter for all such villages." *(Matter of Cutler v Herman,* 3 NY2d 334, 339.) Thus, by its terms and in its effect, the Village Law is a "general law" as defined in subdivision (d) of section 3 of article IX of the New York State Constitution and subdivision 5 of section 2 of the Municipal Home Rule Law. The fact that 12 chartered villages are, by virtue of the savings clauses (Village Law, §§ 23-2200, 23-2202), exempted from operation of the Village Law does not, as the village trustees contend, make it any less a general law. The exception to the operation of the Village Law for chartered villages is based on a reasonable classification and the law applies uniformly to all other villages throughout the State *(Farrington v Pinckney,* 1 NY2d 74, 95; *Matter of McAneny v Board of Estimate & Apportionment of City of N. Y.,* 232 NY 377, 391-

---

2. Article IX (§ 3, subd [d]) of the New York State Constitution states: "Whenever used in this article the following terms shall mean or include: (1) 'General law.' A law which in terms and in effect applies alike to all * * * villages."

Subdivision 5 of section 2 of the Municipal Home Rule Law defines a general law as: "A state statute which in terms and in effect applies alike to all * * * villages."

392; *Wholesale Laundry Bd. of Trade v City of N. Y.,* 43 Misc 2d 816, 818, affd 22 AD2d 762, affd 15 NY2d 604; *Robinson v County of Broome,* 195 Misc 24, 29-30, affd 276 App Div 69; *Matter of Hesselgrave v King,* 45 Misc 2d 256, 258).

■■ We do not accept Special Term's reading of section 10 (subd 1, par [ii], cl e, subcl [3]) of the Municipal Home Rule Law to mean that a village may amend or supersede the Village Law but not in a way that is inconsistent with the Village Law. This clearly anomalous interpretation deprives the section of any meaning and violates the accepted canons of construction that all parts of a statute must be harmonized with each other and with the general intent of the statute, and that each part of the statute must, if possible, be given effect (McKinney's Cons Laws of NY, Book 1, Statutes, § 98); and that any construction should be avoided which produces an anomalous or absurd result (McKinney's Statutes, § 145) or deprives a provision of meaning and effect (McKinney's Statutes, § 144).

Further, the construction adopted by Special Term does violence to the natural and obvious meaning of the provision which is to allow villages to amend the Village Law as it affects their own affairs. It is fundamental that the court must, if possible, give effect to the plain meaning of the statute (McKinney's Statutes, § 94; *Patrolmen's Benevolent Assn. of City of N. Y. v City of N. Y.,* 41 NY2d 205, 208).

It is possible to resolve the apparent conflict between the provisions of section 10 (subd 1, par [ii], cl e, subcl [3]) of the Municipal Home Rule Law specifically authorizing villages to amend the Village Law and the limiting provisions contained in section 10 (subd 1, pars [i], [ii]) of the Municipal Home Rule Law by reading the words "not inconsistent with any general law" as being impliedly subject to an exception where, as here, the inconsistency has been specifically authorized by the Legislature in the same section as the limitation. Because the Legislature must have intended the provision to have effect and to fit with the rest of the statute, reading the limiting phrases as subject to the proviso: "except as specifically authorized in this section" seems reasonable.

Such interpretation is consistent with the statutory mandate that the Municipal Home Rule Law "shall be liberally construed" (Municipal Home Rule Law, § 51), and that it was "the intention of the legislature by this chapter to provide for carrying into effect provisions of article nine of the constitu-

tion and the statute of local governments and to enable local governments to adopt and amend local laws for the purpose of fully and completely exercising the powers granted to them under the terms and spirit of such article" (Municipal Home Rule Law, § 50, subd 1). Furthermore, that the Legislature did not intend the general grant of power to local governments to "adopt and amend local laws not inconsistent with the provisions of the constitution or not inconsistent with any general law" contained in section 10 (subd 1, pars [i], [ii]) of the Municipal Home Rule Law to limit or restrict the specific grant of power to villages to supersede or amend the Village Law contained in section 10 (subd 1, par [ii], cl e, subcl [3]) of the Municipal Home Rule Law is evident from the Legislature's own directive pertaining to construction of the Municipal Home Rule Law contained in section 51 of the Municipal Home Rule Law, which reads in pertinent part: "A permissive procedure authorized by this. chapter shall not be deemed to be exclusive or to prohibit the use of any other procedure authorized by any state statute, charter or local law lawfully adopted".

Our conclusion that the Legislature did not intend the limiting language in section 10 (subd 1, pars [i], [ii]) to nullify the specific authority granted to villages to amend the Village Law is strengthened by the subsequent legislative action in adding subclause (3) to section 10 (subd 1, par [ii], cl d) of the Municipal Home Rule Law giving towns authority to amend the Town Law. Subclause (3), added by section 1 of chapter 365 of the Laws of 1976 and amended by section 1 of chapter 805 of the Laws of 1976, insofar as pertinent, provides: *"The amendment or supersession in its application to it, of any provision of the town law relating to the property, affairs or government of the town* or to other matters in relation to which and to the extent to which it is authorized to adopt local laws by this section, notwithstanding that such provision is a general law, unless the legislature expressly shall have prohibited the adoption of such a local law. Unless authorized by other state statute this subparagraph shall not be deemed to authorize supersession of a state statute relating to (1) a special or improvement district or an improvement area, (2) creation or alteration of areas of taxation, (3) authorization or abolition of mandatory and permissive referendum or (4) town finances as provided in article eight of the town law; provided, however, that nothing set forth herein shall preclude the

transfer or assignment of functions, powers and duties from one town officer or employee to another town officer or employee, and provided, however, further that the powers of local legislation and appropriation shall be exercised by the local legislative body." (Emphasis added.)

■ It is a rule of construction that a subsequent statute *in pari materia* with an earlier statute may be considered as an aid in the construction of the earlier statute or section (McKinney's Statutes, § 221, subd a; § 223). Thus, from the subsequent amendment of section 10 of the Municipal Home Rule Law, authorizing towns to amend or supersede the Town Law despite the existence of the limiting phrases in section 10 (subd 1, pars [i], [ii]), one must conclude that the Legislature considered the phrases no impediment to amendments or supersession of the Town Law by a town under the authority being granted to towns in the new section and that, by the same token, it had considered the phrases to have been no limitation or restriction on the power of a village to amend the Village Law, granted earlier in section 10 (subd 1, par [ii], cl e, subcl [3]). Further evidence of this intention may be derived from the inclusion of the language in the added subclause 3 (quoted above) specifically prohibiting a town from superseding a State statute in the four enumerated instances. Clearly, such prohibitions would have been meaningless if the Legislature had intended the general limitation against the enactment of local laws "inconsistent with any general law" contained in section 10 (subd 1, pars [i], [ii]) to have been applicable.

■ Such construction of section 10 (subd 1, par [ii], cl e, subcl [3]) of the Municipal Home Rule Law is not violative of section 2 of article IX of the New York State Constitution. Section 2 of article IX is not a limitation on the power of local governments to adopt and amend local laws but is a grant of power "[i]n addition to powers granted in the statute of local governments or in any other law" (NY Const, art IX, § 2, subd [c]), including the Municipal Home Rule Law. In fact, the very stated legislative purpose of the Municipal Home Rule Law is to carry into effect the provisions of article IX of the Constitution and to "enable local governments to adopt and amend local laws for the purpose of fully and completely exercising the powers granted to them under the terms and spirit of such article." (Municipal Home Rule Law, § 50, subd 1.)

Thus, whatever powers with respect to the amendment or

adoption of local laws were conferred on villages by section 2 of article IX would have been in addition to those powers conferred by the Municipal Home Rule Law, one of which, we hold, was the power to amend the Village Law by local law in its application to the particular village effectuating the amendment.

■ It is accepted that the rationale behind the various constitutional and legislative home rule enactments was to vest in municipalities increased control over their own property, affairs and government, and to extend the field in which a local government might legislate and to exclude the State Legislature from that field. *(Matter of Holland v Bankson,* 290 NY 267, 270; *Weber v City of New York,* 18 Misc 2d 543.) It is also settled that in furtherance of these purposes, the laws granting home rule power are to be liberally construed (Municipal Home Rule Law, § 51; *Matter of Krolick v Lowery,* 32 AD2d 317).

The power of a village to amend the Village Law is not of recent origin but has existed continuously for about 25 years under the present section 2 of article IX of the New York State Constitution, adopted November 5, 1963, and under its predecessor section, section 16 of article IX of the 1938 New York State Constitution. The power was added by an amendment to the Village Home Rule Law contained in chapter 744 of the Laws of 1953 which repealed subdivision 4 of section 11 of the Village Home Rule Law (added by L 1942, ch 358), and added a new subdivision 4 of section 11 of that law which provided: "In the exercise of its powers to adopt local laws pursuant to this chapter, the local legislative body of *a village may change, amend or supersede any provision of the village law relating to the property, affairs or government of the village or to other matters in relation to which the village is authorized to adopt local laws by subdivision one of this section,* notwithstanding that such provision may in terms and in effect apply alike to all villages having a population of five thousand or more as determined by the federal census, unless the legislature expressly shall have prohibited the adoption of such a local law." (Emphasis added.) The constitutionality of chapter 744 of the Laws of 1953, until its repeal and re-enactment in 1964 in section 10 (subd 1, par [ii], cl e, subcls [2], [3]) of the Municipal Home Rule Law, had been accepted without question. Indeed, in *Snyder v Delmin Realty Corp.* (207 Misc 218, 223) decided in 1954, the court, referring to the

validity of chapter 744 of the Laws of 1953 under the former 1938 constitutional provision stated: "[t]hat the Legislature had power to enact this amendment is apparent from an inspection of the test of section 16 of article IX of the constitution."

When section 16 of article IX of the 1938 Constitution was replaced by the present section 2 of article IX in 1963, there was no indication either in the wording of the new enactment or elsewhere of any intention of repealing or abrogating the power to amend or to repeal the Village Law which the Legislature had granted to the villages by chapter 744 of the Laws of 1953 under the authority of section 16 of article IX of the 1938 Constitution. It must be assumed that the drafters of the present section 2 of article IX were aware of the powers which the Legislature had extended to villages under chapter 744 of the Laws of 1953 and that if they had intended to abolish the powers of villages to amend the Village Law, they would have done so.

■ We hold, therefore, that the appellants-respondents trustees were empowered to amend the Village Law and that Local Law No. 10 of 1975 was validly enacted.

The judgment should be reversed, on the law, and the petition dismissed, without costs.

MARSH, P. J., CARDAMONE, DILLON and WITMER, JJ., concur.

Judgment unanimously reversed, on the law, and petition dismissed, without costs.