Chief Judge Conway.
The State Commission of Correction of the State of New York is here appealing, by our leave, from an order of the Appellate Division which (1) annulled the determination of the commission ordering the Cayuga County Jail to be closed, and (2) remanded the cause to the commission for a rehearing.
It appears that, following inspections made on behalf of the commission by the secretary and senior inspector of the commission on March 25 and 29, 1955, petitioners were cited by the commission to show cause why the County Jail at Auburn, Cayuga County, New York, should not be closed, under the provisions of subdivision 8 of section 46 of the Correction Law.* In the reply to the citation, petitioner urged that the County Jail not be closed for the reasons that the cost of building a new jail would place an undue tax burden upon the taxpayers of Cayuga County and that the old jail could be renovated so as to render it safe and sanitary.
*612 An inspection report and a separate memorandum, dated April 6, 1955, had been prepared by the secretary and senior inspector of the commission. However, in citing the petitioner to appear at a hearing before it, the commission did not advise petitioner of the existence of the memorandum. Only the inspection report was made known to the petitioner. The hearing was held on May 25, 1955. At no time during the hearing were petitioner’s officers apprised of the existence or contents of the memorandum. The record reveals that the memorandum was a far more detailed exposition of the deplorable conditions extant at the jail and dealt with matters not covered in the inspection report. It pointed out that the jail was originally constructed in 1888; that the locking system was unsafe and obsolete; that the building was structurally defective; and that in spite of continuous prior warnings dating back to 1904, concerning unsafe and lax administrative procedures, such condition had not been improved.. The inspection report and memorandum both concluded with a recommendation that the jail be closed. The commission followed the recommendation and ordered the jail closed.
Thereafter, the petitioner brought the present proceeding, in the nature of an article 78 proceeding, seeking an annullment of the commission’s order. In accordance with the provisions of section 1296 of the Civil Practice Act, the proceeding was transferred to the Appellate Division, Fourth Department, for disposition. The Appellate Division, by a divided court, annulled the determination of the commission and remitted the matter to that body “ for a hearing in accordance with the statute [Correction Law, § 46, subd. 8].” The court based its decision upon the ground that the County of Cayuga did not receive “ the hearing required by law, for it never had an opportunity to dispute or refute the matters contained in the secret memorandum of April 6, upon the basis of which the closing order was obviously rendered. Bather the county was misled into answering the quite distinct charges contained in the inspection report. We cannot speculate how petitioner would have met the allegations of the secret memorandum. It is enough that, by the procedure adopted, an opportunity to do so was withheld (cf. Coe v. Armour Fertilizer Works, 237 U. S. 413, 424).”
*613 The issue requiring solution is whether or not the commission was acting in a quasi-judicial or an administrative capacity when it ordered the County Jail of Cayuga County closed. If the commission was acting in a quasi-judicial capacity, the county was entitled, as the Appellate Division held, to an opportunity to dispute or refute the matters contained in the memorandum of April 6th. On the other hand, if the commission was acting in an administrative capacity, the county cannot complain unless the commission acted arbitrarily or capriciously. We have concluded that the commission was acting in an administrative capacity only and that its action was not arbitrary or capricious.
A county is defined as a “ municipal corporation comprising the inhabitants within its boundaries and formed for the purpose of exercising such powers and discharging such duties of local government and administration of public affairs as may be imposed or conferred upon it by law.” (County Law, § 3.) In addition to various other duties and obligations each county is specifically charged with the task of maintaining “ a county jail as prescribed by law.” (County Law, § 217.) By virtue of section 5 of article XVII of our State Constitution, a State Commission of Correction is set up for the purpose of inspecting all penal institutions in the State, and through subdivision 8 of section 46 of the Correction Law such commission is empowered to order closed all those penal institutions found to be unsafe, unsanitary or inadequate to provide for the separation and classification of its prisoners. Subdivision 8 of section 46 of the Correction Law reads thus:
“ The state commission of correction shall visit and inspect all institutions used for the detention of sane adults charged with or convicted of crime, or detained as witnesses or debtors, and, subject to the direction and control of the commissioner of correction, shall: * * *
“8. Close any county jail, county penitentiary ■ * * * which is unsafe, unsanitary or inadequate to provide for the separation and classification of prisoners required by law. The powers and duties of the commission under this subdivision shall be exercised in the following manner: The commission shall cause a citation to be mailed to the sheriff and clerk of the board of
*614 supervisors or of the corresponding governing or elective body of the county * * * in the case of a county penitentiary; to the clerk of the board of supervisors or of the corresponding governing or elective body of the county, in the case of a county lockup * * * at least twenty days before the return day thereof, directing the authorities of the county * * # designated to appear before such commission at the time and place set forth in the citation, and show cause why such county jail, county penitentiary, county lockup * * * shall not be closed. After a hearing thereon or upon the failure to appear, such commission is empowered to order the county jail, county penitentiary, county lockup * * * designated in the citation closed within ninety days, during which time the county * * * may review such order in the manner provided in article seventy-eight of the civil practice act in the supreme court. Ninety days after the order to close has been served by registered letter upon the officers required by this section to be cited if no court review has been taken, and ninety days after the order of such commission has been confirmed by the court, in case of court review, the county jail, county penitentiary, county lockup # * * designated in the order shall be closed, and it shall be unlawful to confine or detain any person therein and any officer confining or detaining any person therein shall be guilty of a misdemeanor.”
Counties, as civil divisions of a State, had their origin in England and were formed to aid in the more convenient administration of government (Markey v. County of Queens, 154 N. Y. 675, 680). So it is today that counties are mere political subdivisions of the State, created by the State Legislature and possessing no power save that deputed to them by that body (Village of Kenmore v. County of Erie, 252 N. Y. 437, 441-442; City of Tulsa v. Oklahoma Natural Gas Co., 4 F. 2d 399, 403, appeal dismissed 269 U. S. 527; 15 C. J., Counties, § 4, pp. 393-394). Insofar as political and governmental powers of a county (municipal corporation) are concerned, it is clear that the county is a mere agent of the State and as such is subject to the control of the Legislature (County of Albany v. Hooker, 204 N. Y. 1, 9-10; Hunter v. Pittsburgh, 207 U. S. 161, 178-179; Williams v. Eggleston, 170 U. S. 304, 310; 20 C. J. S., Counties, § 1, pp. 754-755). Likewise, it is clear that the Legislature, within
*615 constitutional limitations, may by legislative fiat diminish, modify or recall any power delegated to a county of governmental or political nature and retake unto itself direct control of matters relating to local government (Matter of McAneny v. Board of Estimate, 232 N. Y. 377, 389-390; People ex rel. Simon v. Bradley, 207 N. Y. 592, 611; Cort v. Smith, 249 App. Div. 1, 5-6, affd. 273 N. Y. 481; County of Queens v. Petry, 54 App. Div. 115, 116; Matter of New York State Employees’ Retirement System v. Board of Supervisors, 157 Misc. 87, 89, affd. 251 App. Div. 198, affd. 278 N. Y. 496).
The care and custody of criminals is a function of government (Lefrois v. County of Monroe, 162 N. Y. 563, 567). There is no State constitutional provision requiring or empowering counties to maintain jails. Bather, that duty has devolved upon counties by act of our State Legislature contained in section 217 of the County Law. It is doubtless true that the Legislature could abolish county jails altogether and require counties to care for their prisoners in some other institution fixed by law, with or without the consent or approval of the several counties. No question of due process would then arise for what the Legislature, in this regard, has delegated it may by plenary action annul. It follows that if the Legislature may abolish county jails altogether it may also set up standards for the maintenance of such institutions and methods to insure that those standards are met. To that end, carrying out the mandate of section 5 of article XVII of the New York State Constitution, the Legislature has delegated to the State Commission of Correction by subdivision 8 of section 46 of the Correction Law the duty of inspecting all penal institutions in the State and, to insure that counties are not recalcitrant in maintaining these jails in the required condition, it has empowered the commission to close any jail found to be “ unsafe, unsanitary or inadequate to provide for the separation and classification of prisoners required by law.” In carrying out the provisions of subdivision 8 of section 46 of the Correction Law, the State Commission of Correction is acting as an arm of the Legislature and in that capacity is possessed of the same powers. So long as the State Commission of Correction follows the dictates of the statute and so long as its determination is not arbitrary its action may not be questioned by the courts.
*616 It is true that the Legislature has provided that before determining whether or not to close any jail the commission is obliged to notify the political subdivision involved, by citation, of its contemplated action and to provide for a hearing to be had (Correction Law, § 46, subd. 8). In the present case that procedure was followed. The hearing called for is one merely administrative in nature, rather than quasi-judicial, requiring only that the commission determine that which the Legislature has delegated to it pursuant to constitutional mandate, namely, to close or not to close the jail. A determination to close does not deprive the county of any property rights. Hence, the.cases relied upon by the majority of the Appellate Division, involving personal or property rights, are inapposite. The Legislature, through the State Commission of Correction, is exercising a purely governmental function, so that no question of due process or substantial evidence arises in this case (C. J. S., Vol. 16A, Constitutional Law, § 570; see, also, Dunne v. County of Rock Is., 283 Ill. 628, appeal dismissed 248 U. S. 532). “ The power of the State unrestrained by the Fourteenth. Amendment to the Federal Constitution over the rights and property of cities is not open to question.” (Robertson v. Zimmermann, 268 N. Y. 52, 64; see, also, Matter of O'Brien v. Commissioner of Educ., 3 A D 2d 321, 324). “ The concept of the supreme power of the Legislature over its creatures has been respected and followed in many decisions ”. (Black Riv. Regulating Dist. v. Adirondack League Club, 307 N. Y. 475, 488, and cases cited therein.)
There being no question of due process of law in this case, our review of the case is limited to a determination of whether or not the action of the commission was arbitrary. A review of the evidence makes manifest that it was not. The inspection report alone was sufficient to support the commission’s determination.
The order of the Appellate Division should be reversed and the determination of the State Commission of Correction confirmed, without costs.
Judges Desmond, Dye, Fuld, Froessel, Van Voorhis and Burke concur.
Order reversed, etc.

 The inadequacy of the jail is pointed up by the fact that during the course of the inspection — on March 28, 1955 — three male minors escaped therefrom.