Scileppi, J.
Section 1 of chapter 320 of the Laws of 1965 provides in part: “ It is hereby declared to be the public policy of the state that the public welfare and safety require that the state and local communities give assistance to educational programs which are important to our national defense, and the general welfare of the state.” (L. 1965, ch. 320, § 1.)
In keeping with this declaration of policy, the Legislature enacted subdivision 2 (renum. subd. 3 by L. 1966, ch. 795) of section 701 of the Education Law permitting the appropriate school authorities [1] ‘ to purchase and to loan upon individual request, to all children * * * who are enrolled in grades seven to twelve of a public or private school which complies with the compulsory education law, textbooks. Textbooks loaned to children enrolled in grades seven to twelve of said private schools shall be textbooks which are designated for use in any public, elementary or secondary schools of the state or are approved by any boards of education, trustees or other school authorities. Such textbooks are to be loaned free to such children subject to such rules and regulations as are or may be prescribed by the board of regents and such boards of education, trustees or other school authorities.”
Plaintiffs seek judgment that this statute violates both the State and Federal Constitutions (N. Y. Const., art. XI, § 3; U. S. Const., 1st and 14th Arndts.) The defendant Commissioner of Education and the intervenors-defendants, parents of children residing in plaintiffs’ school district who attend parochial schools, moved for dismissal of the complaint for failure to state a cause of action or for summary judgment declaring the statute constitutional. The plaintiff Boards of Education cross-moved for summary judgment declaring the statute unconstitutional.
Special Term denied all defendants’ motions and granted plaintiffs ’ cross motion, holding that the plaintiffs had standing *115 to sue; that the statute contravenes section 3 of article XI of the State Constitution (the ‘‘ Blaine Amendment ”); and that the statute violates the establishment and free exercise clauses of the First Amendment.
The Appellate Division reversed upon the ground that the plaintiffs had no standing.
Since we must reach the merits in this case[1], we come to the question whether this statute violates section 3 of article XI of the New York State Constitution: “Neither the state nor any subdivision thereof shall use its property or credit or any public money, or authorize or permit either to be used, directly or indirectly, in aid or maintenance, other than for examination or inspection, of any school or institution of learning wholly or in part under the control or direction of any religious denomination, or in which any denominational tenet or doctrine is taught, but the legislature may provide for the transportation of children to and from any school or institution of learning.”
The last portion of this section, relating to the transportation of children, was added by special amendment to obviate the decision in Judd v. Board of Educ. (278 N. Y. 200 [1938]).
In Judd, this court by a vote of four to three declared that a law which provided for school busing of parochial school children could not be sustained because it constituted indirect aid to schools which was in violation of the Blaine Amendment. Judd determined that, although school busing was primarily for the benefit of the child, it still had the effect of giving an incidental benefit to sectarian schools and thus ran afoul of section 3 of article XI prohibiting indirect aid. It is now argued that the statute before the court providing for textbooks loans to all children, including those attending parochial schools, must be unconstitutional for the same reason. We cannot agree with the reasoning of the majority in the Judd case and accordingly hold that it should not be followed. The New York State Constitution prohibits the use of public funds for a particular purpose; that is, aiding religiously affiliated schools. Certainly, not every State action which might entail some ultimate benefit to parochial *116 schools is proscribed. Examples of co-operation between State and church are too familiar to require cataloguing here. As we said, although in a different context: “It is thus clear beyond cavil that the Constitution does not demand that every friendly gesture between church and State shall be discountenanced. The so-called ‘ wall of separation ’ may be built so high and so broad as to impair both State and church, as we have come to know them”. (Matter of Zorach v. Clauson, 303 N. Y. 161, 172, affd. 343 U. S. 306.) The architecture reflected in Judd would impede every form of legislation, the benefits of which, in some remote way, might inure to parochial schools. It is our view that the words “ direct ” and “ indirect ” relate solely to the means of attaining the prohibited end of aiding religion as such.
The purpose underlying section 701, found in the Legislature’s own words (L. 1965, ch. 320, § 1, supra), belies any interpretation other than that the statute is meant to bestow a public benefit upon all school children, regardless of their school affiliations. There can be no serious suggestion that the declaration of purpose by the Legislature was a verbal smoke screen designed to obscure a nefarious scheme to circumvent the New York State Constitution. No one in the last third of the 20th Century can doubt that a program aimed at improving the quality of education in all schools is a matter of legitimate State concern.
Since there is no intention to assist parochial schools as such, any benefit accruing to those schools is a collateral effect of the statute, and, therefore, cannot be properly classified as the giving of aid directly or indirectly.
Only textbooks designated for use by the public schools or approved by Boards of Education, trustees or school authorities may be lent (Education Law, § 701, subd. 3). The State and local governments have long provided public libraries with books for use by all persons. It is not uncommon for schools, public and private alike, to assign various “ outside readings ” to pupils. Children often, then, fulfill assignments for courses in both public and private schools by means of using and borrowing from public libraries. We do not consider this indirect aid to private or parochial schools.
*117 At a time when we have large-scale Federal and State aid to education, it is justly feared that children who are denied these benefits may receive education inferior to children in public schools. Unless certain types of aid can be made available to all children, we run the risk of creating an educational lag between children in public and private schools. We cannot perpetuate an erroneous interpretation of the State Constitution merely because it is contained in the reports of this court.
Having decided that section 701 entails no aid to the parochial schools, we thus hold that there is no Federal constitutional question under the establishment clause of the First Amendment. The State makes no affirmation of religious beliefs or activities within the public schools. Section 701 remains completely neutral with respect to religion, merely making available secular textbooks at the request of the individual student and asking no question about what school he attends. Despite the flexibility of the English language, it is impossible to conclude that loaning nonreligious textbooks to all students, including those who attend a parochial school, establishes a religion or constitutes the use of public funds to aid religious schools (cf. Everson v. Board of Educ., 330 U. S. 1,16, IS).[2]
As a practical matter, to deny private school children the benefit of the State aid provided by section 701 could widen the gap between those children in deprived areas who attend parochial schools and those attending public schools in the same areas who receive the benefits of all the many and necessary *118 programs backed by the massive resources of both State and Federal Governments.
The order appealed from should be affirmed, without costs.

. The writer and Judges Burke and Bergan agree with the Appellate Division majority that plaintiffs have no standing. Judge Keating, who is for affirmance on the merits, agrees with the dissenters that plaintiffs do have standing.

. Mr. Justice Jackson, who dissented in Everson, objected to the statute there under consideration because it limited payments to the parents of public school or of Catholic school children. He said: “A policeman protects a Catholic, of course — but not because he is a Catholic; it is because he is a man and a member of society. The fireman protects the Church school — but not because it is a Church school; it is because it is property, part of the assets of our society. Neither the fireman nor the policeman has to ask before he renders aid ‘Is this man or building identified with the Catholic Church?’ But before these school authorities draw a check to reimburse for a student’s fare they must ask just that question, and if the school is a Catholic one they may render aid because it is such, while if it is of any other faith or is run for profit, the help must be withheld.” (330 U. S., supra, p. 25.) Subdivision 3 of section 701 of the Education Law asks no questions about what school the child attends, thus avoiding even the objection raised by Mr. Justice Jackson in his Everson dissent.