COUNTY OF RENSSELAER et al., Respondents, v EDWARD V. REGAN, as Comptroller of the State of New York, et al., Appellants.

Third Department, December 31, 1991

### APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Denise A. Hartman* and *Peter H. Schiff* of counsel), for appellants.

*Thuillez, Ford, Gold & Conolly (Michael J. Hutter* of counsel), for respondents.

*Richard E. Mannix (John T. Casey, Jr.,* of counsel), for Clarence D. Rappleyea, *amicus curiae.*

### OPINION OF THE COURT

LEVINE, J.

In 1981, the Legislature enacted Vehicle and Traffic Law article 43-A, later reenacted as present Vehicle and Traffic Law § 1197 (L 1981, chs 910, 913; L 1988, ch 47), to encourage localities to establish a county-wide "special traffic options program for driving while intoxicated" (hereinafter STOP-DWI) aimed at reducing alcohol-related traffic injuries and deaths through coordinated efforts within the counties for better enforcement, prosecution and prevention of drunken driving. Each county wishing to participate was required to submit a program to be approved by the Commissioner of Motor Vehicles *(see,* Vehicle and Traffic Law § 1197 [7]), who is required to monitor the county program thereafter *(see,* Vehicle and Traffic Law § 1197 [8] [b]). The STOP-DWI legislation

offered an incentive to counties to participate by providing that all fines, penalties and forfeitures imposed by the various courts of the county in intoxicant-related offense prosecutions would be diverted from State revenues to the county where the offense was committed and deposited in a special account to fund the local program (see, Vehicle and Traffic Law § 1197 [1] [a]; § 1803 [1] [a]). Fines, forfeitures and penalties on such offenses collected by courts of the Unified Court System, including County, City and District Courts and the Civil and Criminal Courts of the City of New York, are to be paid directly by those courts to the county within the first 10 days of the month following collection (see, Vehicle and Traffic Law § 1803 [9] [a]). Other courts (e.g., Town and Village Justice Courts) are required to remit such fines, penalties and forfeitures to defendant Comptroller, who then "shall pay these funds to the county in which the violation occurs" (Vehicle and Traffic Law § 1803 [9] [b]).

All the counties of the State elected to participate in the STOP-DWI program and they received all of the moneys collected in drunken driving and related prosecutions from the courts within their respective geographical boundaries until the adoption of the 1990-1991 State Operations Budget. That budget bill contained a provision directing the Comptroller to "collect, withhold and receive and deposit to the credit of the general fund up to two percent of revenues received in any court" pursuant to the STOP-DWI program, for the costs of the Department of Motor Vehicles (hereinafter DMV) in carrying out its statutory responsibilities under the STOP-DWI legislation.

Plaintiffs, consisting of five STOP-DWI participating counties, the STOP-DWI Coordinators Association and the STOP-DWI Coordinator of Rensselaer County, brought this action to declare unconstitutional the foregoing provision in the 1990-1991 State Operations Budget. They asserted three grounds for invalidity under the State Constitution: (1) a violation of article V, § 1 in that it imposes upon the Comptroller duties not incidental to his constitutional duties, (2) a violation of article III, § 1 because it imposes lawmaking duties without adequate guidelines, and (3) a violation of article IX, §§ 1 and 2 because the appropriation interferes with the home rule powers of the counties. Defendants answered and raised lack of standing as an affirmative defense. Plaintiffs then moved for summary judgment. Defendants opposed the motion and requested judgment in their favor. After granting the motion

of Clarence Rappleyea, Minority Leader of the State Assembly, to file a brief *amicus curiae,* Supreme Court "assumed" plaintiffs had standing, and then proceeded to declare the challenged appropriations provision unconstitutional on the ground that the discretion afforded the Comptroller thereunder to determine the amount to be withheld from STOP-DWI funds up to the 2% maximum and to determine from which courts in which counties to withhold the funds violated NY Constitution, article V, § 1. (151 Misc 2d 552.) This appeal followed.

We affirm. Although we agree with defendants that Supreme Court should not have assumed plaintiffs' standing before deciding the constitutional challenge in their favor, we find that the county plaintiffs do have standing here because they are asserting a proprietary claim of entitlement to a specific fund, namely, their entitlement to receive all of the fines, forfeitures and penalties collected by the courts in proceedings on the offenses specified in the STOP-DWI legislation. This is sufficient for purposes of conferring standing to challenge the validity of subsequent legislation impairing their entitlement to that fund *(see, Matter of City of New York v Lawton,* 128 AD2d 202, 206; *Purcell v Regan,* 126 AD2d 849, 850, *lv denied* 69 NY2d 613). The case of *Matter of Town of Moreau v County of Saratoga* (142 AD2d 864), relied upon by defendants, is readily distinguishable. In *Town of Moreau,* the fund the petitioner town claimed entitlement to was a share in county sales tax revenues, but the very statute relied upon to establish that entitlement made it subject to the right of the county to expend all tax proceeds for county and educational purposes or to enter into an agreement with cities in the counties whereby no tax revenues would be diverted to any town *(see, supra,* at 865). Thus, it was concluded in *Town of Moreau* that the petitioners' interest in the county sales tax revenues was too speculative to confer standing. Contrastingly, the county plaintiffs' right to share in the STOP-DWI funds here was unconditional and absolute under Vehicle and Traffic Law § 1197, prior to the enactment of the 1990-1991 appropriations provision.

Turning to the merits, the dispositive issue here is whether the challenged 1990-1991 appropriations provision is invalid as violating the constitutional constraint that the Legislature "shall assign to [the Comptroller] *no administrative duties,* excepting such as may be *incidental* to the performance of [the Comptroller's constitutional] functions" (NY Const, art V,

§ 1 [emphasis supplied]). Defendants claim that the provision merely assigned duties to the Comptroller that are incidental to his constitutional functions under NY Constitution, article V, § 1 of auditing both official accounts and the accrual and collection of State revenues and receipts. They further assert that the appropriations provision should be construed as requiring the Comptroller to withhold only an amount equal to DMV's actual STOP-DWI administrative expenses, up to the 2% ceiling, and that the withholding should then be applied proportionally to the fine, penalty and forfeiture revenues from all courts in the respective STOP-DWI participating counties. Thus, defendants argue, the 1990-1991 appropriations provision should be construed to withstand the constitutional objection that it conferred excessive administrative discretion upon the Comptroller.

■ Even if we were to agree with defendants that the appropriations measure under review gives sufficiently definite direction to the Comptroller regarding the amounts of STOP-DWI funds to be extracted for reimbursement of DMV expenses and as to the sources thereof, we nonetheless find a violation of the constitutional limitation on legislative assignment of extraneous administrative duties to the Comptroller. The STOP-DWI legislation provides in unmistakable terms that the moneys collected by the courts of participating counties as fines, forfeitures and penalties for prosecution of the covered offenses constitute county and not State receipts. Vehicle and Traffic Law § 1197 (1) (a) clearly states that once a county establishes a STOP-DWI program, *"it shall receive* fines and forfeitures collected by any court, judge, magistrate or other officer within that county from violations of [alcohol-related driving offenses]" (emphasis supplied). Indeed, as already described, the law directs that in STOP-DWI participating counties, fines, penalties and forfeitures for the covered offenses collected by courts of record within the county are to be remitted directly to the county without ever coming into the hands of the Comptroller *(see,* Vehicle and Traffic Law § 1803 [9] [a]).

Thus, the duty of the Comptroller assigned by the appropriations provision under review is not analogous to the Comptroller's setting off an amount due the State incidental to auditing a claim for payment from State funds *(cf., Matter of Carlon v Regan,* 98 AD2d 544, 546, *mod* 63 NY2d 1011; *Matter of Chemical Bank v Regan,* 90 AD2d 581, 581-582, *affd* 58 NY2d 809). Nor is the legislation challenged here merely a

direction for the internal allocation of funds within the State's financial structure *(cf., Methodist Hosp. v State Ins. Fund,* 102 AD2d 367, 377-378, *affd* 64 NY2d 365, *appeal dismissed* 474 US 801). Instead, the 1990-1991 appropriations provision assigned the Comptroller the task of collecting a portion of county revenues to be thereafter deposited in the State's General Fund. We find no nexus whatsoever between this statutorily imposed responsibility and any auditing or other constitutionally designated function of the Comptroller. Indeed, elimination of statutory revenue collection duties of the Comptroller was apparently one of the objectives of the 1925 amendment to the State Constitution adding article V, § 1 and its prohibition against assignment of administrative responsibilities not incidental to the Comptroller's primary auditing functions *(see,* Report of the State Reorganization Commn, 1926 NY Legis Doc No. 72, at 23; *see also, Patterson v Carey,* 41 NY2d 714, 724; 1967 Report of Temporary State Commn on Constitutional Convention, ch 14, part 4, at 168-169). Accordingly, we affirm Supreme Court's invalidation of the 1990-1991 appropriations provision in question. It is unnecessary for us to consider plaintiffs' remaining constitutional objections, and we decline to reach the additional constitutional issues raised by the *amicus curiae (see, Matter of Lezette v Board of Educ.,* 35 NY2d 272, 282-283).

WEISS, J. P., MIKOLL, YESAWICH JR. and MERCURE, JJ., concur.

Ordered that the order is affirmed, with costs.